## Case No. 10,950.

### The PENNSYLVANIA.

[9 Blatchf. 451.] [1]

Circuit Court, E. D. New York. Feb. 23, 1872.[2]

COLLISION — RATE OF SPEED IN FOG — STEAMER AND SAILING VESSEL—FOG HORN—JURISDICTION OF EASTERN DISTRICT OF NEW YORK—VALUE OF VESSEL.

1. A steamship and a barque collided, in the Atlantic Ocean, within a day's sail of New York, in the track of her inward and outward commerce, where the presence of other vessels was to be expected, in a fog so dense that a vessel could not be seen at a distance greater than the length of the barque. The steamer was going, at the time, at a speed of not less than seven miles an hour: *Held*, that the steamer was in fault in going at such a rate of speed, and that such fault was a cause of the collision.

[Cited in The Atlas, Case No. 634; Ellis v. The Katy Wise, Id. 4,404.]

2. Her navigators were in fault, in giving conflicting and vacillating orders, after discovering the barque.

3. The barque, although under way, was ringing a bell, and was not blowing a fog horn. That was a fault on her part, but, on the evidence, it was not a fault which contributed to the collision.

4. The jurisdiction of the district court for the Eastern district of New York, in this case, sustained, although the vessel proceeded against was found and attached in the waters of the county of New York.

5. The report of the commissioner as to the value of the libellant's vessel, founded on conflicting or varying estimates, sustained.

[Appeal from the district court of the United States for the Eastern district of New York.

[This was a libel by the owners of the bark Mary A. Troop against the Pennsylvania, to recover the value of the bark, which was sunk in a collision between the two vessels. A decree was rendered condemning the Pennsylvania, with a reference to a master to ascertain the value of the bark (Case No. 10,-947); and it was from this decree that the present appeal is taken. Exceptions which were filed to the master's report were overruled in Case No. 10,948.]

Benedict & Benedict, for libellants.

Charles Donohue and John Chetwood, for claimants.

WOODRUFF, Circuit Judge. The proofs in this cause fully establish fault in the management of tue steamship, both in respect to the speed at which she was running, in a fog so dense that a vessel could not be seen at a distance greater than the length of the

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

2 [Affirming Case No. 10,947. Decree of circuit court reversed by supreme court in 19 Wall. (86 U. S.) 125.]

barque; and, I think, also, there was fault in the confused and conflicting or vacillating orders given after the barque was discovered. I greatly doubt whether any change in her course, after the barque was seen, would have been completely effectual to prevent a collision; but, had she done her utmost, in an endeavor to turn in a single direction, accompanying that effort by a reversal of her engine, the injury by the collision might have been greatly mitigated. To this is to be added the fact, fairly inferrible from the testimony of the claimants' own witnesses, that the first report of the lookout, announcing a bell on the starboard bow, was not heard by the officer to whom it was addressed; and the suggestion becomes more significant, that if, at that moment, a consistent effort had been made, the collision might not have happened, or its injurious consequences would have been greatly lessened. The second officer, who was on the bridge, states, that the first report he heard was, "Ship ahead, a little on the starboard bow;" and no other officer testifies to hearing any earlier report. He testifies, also, that the barque was then "barely her own length off." It is perfectly shown, by the two men on the lookout, that the bell on the barque was heard before she could be seen. It follows, that the bell was not properly reported, or the officer was inattentive. The first thing heard by the officer at the bow, was the bell itself, and he saw the barque at the same time, then barely a ship's length distant. So, also, the master heard nothing until he heard the bell and saw the barque. The man at the wheel testifies explicitly to the conflicting or vacillating orders, and there is no explicit denial that they were given, by the officers.

The principal and primary fault, however, was in running at too great speed, in such a fog. I concur with the district judge, on that subject, in two aspects of the question—first, that seven miles an hour was, under such circumstances, a hazardous speed, when the steamship was within a day's sail of New York, in the track of her outward and inward commerce, where the presence of other vessels was to be expected; and, second, the proof is not very satisfactory, that her speed was not greater.

On the other hand, it is clear, that the barque was in fault. She was in direct violation of the rule of navigation which required her to blow a fog-horn. It is not improbable that her officers construed the rule to require them to ring a bell. Such is the testimony in her behalf. They regarded themselves as lying to; and, in this, they are supported by other witnesses, who are experienced mariners. They appeared to have regarded the term "under way," in the rule, as the opposite of "lying to." But, in this they were mistaken, if the term "lying to" was at all apt to describe their condition. The rule is, that, in a fog, sailing ships under way shall use a fog-horn; when not under way, they shall use a bell. Here, the barque, although having some of her sails reefed, and her helm lashed, was on her starboard tack, and making not less than a mile an hour. True, she was not under full headway, but she was, nevertheless, under way, and should have used her fog-horn. Evidence was given, tending to show that the bell which she used could be heard at a greater distance than a fog-horn could be heard. But parties are not at liberty to disregard a distinct and explicit rule of navigation, upon their judgment that its disobedience will better subserve the purpose for which the rule is designed. The fact so testified may be useful in determining whether the neglect to use a fog-horn contributed to the collision; but, if the negative of that be proved, by decided, and even conclusive, evidence, it will, nevertheless, be true, that the disobedience of the rule is not justified, when obedience was practicable.

I do not find, upon the evidence, any other fault in the conduct of the barque. She had a perfect right to lash her helm, and, in view of the head winds, which impeded her direct progress, suffer herself to be carried, on her starboard tack, in the direction off her desired course, at as slow a rate as possible. Nor do I find that any want of vigilance or lookout, on her part, if any there was, could have had any influence in causing the collision.

The case stands thus: The Pennsylvania was in fault; and that fault, beyond all question, was a cause of the collision. It brought the steamship into a position, relatively to the barque, in which collision, if not inevitable, was made so by the failure to discover the barque, and act on the discovery in season, and by the conflicting or vacillating orders and movements which she made. The barque was in fault, by neglecting or misinterpreting the rule which required her to blow the fog horn, and by ringing the bell, which indicated that she was not under way. The question in the case is, by these facts, reduced to the enquiry, whether the barque should contribute to the loss resulting from the collision; and this is to be answered by enquiring whether the fault of the barque contributed to the collision itself, for, if it did not, then, however severely the neglect of the rule may be condemned, such condemnation in no wise enures to the benefit of the other vessel.

It is claimed, that the neglect of the rule did contribute to the collision in two ways—first, that a fog horn could have been heard further, and, if blown, would have earlier apprised the Pennsylvania of her neighborhood, and afforded her more time and opportunity to check her own speed and avoid the barque; and, second, that the ringing of the bell was adapted to deceive those in the management of the Pennsylvania, into the belief that she was not in motion, and that the manage-

ment of the Pennsylvania was thereby affected. If there is just reason, upon the proofs herein, to conclude, that, had the fog horn been used, the Pennsylvania would have had such earlier notice, that, under the speed at which she was moving, her efforts to avoid the collision would have been more effectual, or, if her officers were in fact deceived, and thereby led to do what otherwise they would not have done, or were led to omit to do anything which otherwise they would have done, then the fault of the barque contributed to the collision, and her owners should share in the resulting loss.

This question is often one of much delicacy. Parties found in actual fault should make it plain that their fault was not a contributory cause of the disaster. Community in fault, in general, involves community in the aggregate or combined result; and I am bound to admit, that, in this case, there is room for no little hesitation, in declaring that the fault of the barque in no wise operated as a cause of the collision of the two vessels.. But it was deemed, in the court below, that all suggestion that the use of the bell had any influence was speculative and imaginary; that an examination of the proofs by a practical mind, and a view of all the facts in the light of reason and good sense, would show, that the theory, suggested by counsel, of what was possible, was a suggestion of what might, in a supposable case, be possible, but which, in this case, is not true; that no witness from the Pennsylvania has suggested that any one was deceived, or that any one on board of her acted upon any idea that the barque was in any other situation than she proved to be; that, in fact, for reasons above suggested, the steamship did absolutely nothing until they saw the barque, and then the measures taken to avoid her were taken not in view of the bell, or of the want of the sound of the fog horn, but in view of the report, "Ship ahead, off starboard bow;" that there is, therefore, literally, no ground for any suggestion whatever, that those who actually directed the movements of the Pennsylvania were deceived, or that those movements were, in any manner, affected by the use of the bell, as an indication that the barque was not under way; and that, as to the claim that the fog horn would have sooner apprised the Pennsylvania of the neighborhood of the barque, several answers are pertinent—that the bell was heard, and ineffectually reported, and, in fact, nothing was done until the barque was seen; that, in truth, the preponderance of the testimony is, that the bell on the barque could be heard further than a fog horn could be heard; and, finally, that, if there could be claimed any slight difference in this respect—for, upon the testimony most favorable to the Pennsylvania, it must be slight—that difference, upon all the proofs, would manifestly have not affected the movements of the Pennsylvania or avert-er the collision. It is not without great hesi-

tation that my mind has concurred with the district judge on this branch of the case.

As to the question of the jurisdiction of the court, I think there is no room for doubt. The cause was maritime. Of the subject matter the district court for the Eastern district has jurisdiction; and, by the express provision of the statute creating the district and the court, it has power to send its process into any of the waters of the county of New York, and thereby gain jurisdiction of the cause, by attaching the vessel proceeded against. Act Feb. 25, 1865; 13 Stat. 438, § 2.

As to the exceptions to the commissioner's report on the value of the vessel, it must suffice to say, that it was founded upon conflicting or varying estimates; and it cannot, I think, be said, that the commissioner based his report on the proof of value in New York, more than it can be said he based it on the proof of value at St. Johns, where the vessel was owned. He properly found the value of the vessel at the time and place of collision. As a guide to that value, he had before him the estimates of various witnesses at her home port, varying in amount, from greatly less to greatly more than he reported, and the estimate of witnesses of her value at her port of destination, varying from the amount which he reported to a much greater extent. If I were to conclude, that, on a perusal of the written testimony, I might differ in some small sum from his conclusion, I must still say, that the proof sustains his finding in such degree that it ought not to be disturbed.

This view leads to a decree for the amount reported and decreed to the libellants below [Case No. 10,947], with costs of the appeal.

[NOTE. On appeal to the supreme court the decree of this court was reversed, it being held that both vessels were in fault. 19 Wall. (86 U. S.) 125. Thereupon the claimants, not having alleged that they had suffered any damages by reason of the collision, moved in the circuit court for leave to amend their answer in that respect. The motion was granted. Case No. 10,951.]